UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROBERT MALEK,

                       Plaintiff,

     v.

NEW YORK UNIFIED COURT SYSTEM, *et al.*,

                    Defendants.

**MEMORANDUM & ORDER**

22-cv-5416 (HG) (RER)

ROBERT MALEK,

                       Plaintiff,

     v.

NEW YORK UNIFIED COURT SYSTEM, *et al.*,

                    Defendants.

22-cv-6515 (HG) (RER)

ROBERT MALEK,

                       Plaintiff,

     v.

LETITIA JAMES, *et al.*,

                    Defendants.

22-cv-6538 (HG) (RER)

ROBERT MALEK,

                       Plaintiff,

     v.

NEW YORK UNIFIED COURT SYSTEM, *et al.*,

                    Defendants.

22-cv-6775 (HG) (RER)

ROBERT MALEK, ROBERT MALEK C/O M.M,

Plaintiffs,

v.

MARGARET INGOGLIA, *et al.*,

Defendants.

22-cv-7815 (HG) (RER)

**HECTOR GONZALEZ**, United States District Judge:

**Table of Contents**

BACKGROUND ................................................................................................................ 1

PROCEDURAL HISTORY .............................................................................................. 2

CONSOLIDATION ......................................................................................................... 10

LEGAL STANDARD ...................................................................................................... 11

DISCUSSION ................................................................................................................... 12

I.      Plaintiff Cannot Bring Suit on Behalf of His Minor Child ................................ 13

II.     *Younger* Abstention ............................................................................................. 14

III.    *Rooker-Feldman* Doctrine .................................................................................. 15

IV.     Plaintiff Fails to State a Claim Under Section 1985, Title VI, the ADA, or the RA ........ 17

        A.      Section 1985 ............................................................................................... 17

        B.      Title VI ...................................................................................................... 19

        C.      ADA and RA ............................................................................................. 20

V.      Plaintiff's Section 1983 Claims ........................................................................... 22

        A.      NYAG, OCFS, OIG, UCS, and the Excellence Initiative ......................... 22

        B.      DiFiore, James, Poole, White, and Kuryluk ............................................. 23

        C.      Williams, Stanley, John/Jane Doe ............................................................ 26

        D.      ACS/NYC Children; ACS Attorneys and Staff ....................................... 27

        E.      Office of the Corporation Counsel and Attorneys .................................... 30

        F.      Brooklyn and Manhattan DAs' Offices, the N.Y.P.D., and Detective Thimote... 31

        G.      City of New York ...................................................................................... 32

        H.      Synmoie and Hevesi .................................................................................. 33

        I.      Legal Aid and Legal Aid Attorneys ......................................................... 34

        J.      Sun River Defendants ............................................................................... 36

        K.      Margaret Ingoglia and J.P.I. ..................................................................... 38

VI.     Claims Against Nonmoving Defendants .............................................................. 39

VII.    Dismissal With Prejudice ..................................................................................... 42

CONCLUSION ................................................................................................................. 43

*Pro se* Plaintiff Robert Malek commenced the five above-captioned actions between November 2021 and December 2022.[1]   Plaintiff brings civil rights claims against individuals and entities involved with either (i) a Family Court proceeding brought against Plaintiff in Kings County, New York or (ii) Plaintiff's subsequent federal lawsuits, which were brought in response to that Family Court proceeding.   For the reasons discussed below, Plaintiff's complaints are consolidated, and all of Plaintiff's claims are dismissed with prejudice.

## BACKGROUND

These actions stem from a neglect petition filed against Plaintiff by the New York City Administration for Children's Services ("ACS") in Kings County Family Court, pursuant to Article 10 of the New York Family Court Act, on July 31, 2018 (the "Family Court Proceeding").   *Malek I*, ECF No. 1-1 (Family Court records); *Malek I*, ECF Nos. 151-2, 151-3 (final Family Court orders).   In March 2020, after a temporary order of protection was entered against Plaintiff directing him to refrain from seeing his minor child except for ACS-supervised visits, *see Malek I*, ECF No. 1-1 at 15, Plaintiff filed a motion in Family Court seeking to modify the visitation order so he could attend church with his child, *id.* at 41–43.   Plaintiff's original complaint alleged that the judge in the Family Court Proceeding ignored this motion, as well as some of his other filings.   *Malek v. N.Y. State Unified Ct. Sys., et al.* ("*Malek I*"), No. 22-cv-

---

[1]      Four actions were originally filed in the United States District Court for the Northern District of New York ("N.D.N.Y.") before being transferred to the Eastern District of New York ("E.D.N.Y."), at which point they were given new docket numbers.   After the original four actions were transferred, Plaintiff filed an additional action in this Court.   This Order refers to all the actions by the docket number assigned to them by the E.D.N.Y.   It additionally assigns each action a short-cite, for ease of reference:   *Malek I* (N.D.N.Y. No. 21-cv-1230; E.D.N.Y. No. 22-cv-5416) (filed November 11, 2021); *Malek II* (N.D.N.Y. No. 22-cv-167; E.D.N.Y. No. 22-cv-651) (filed February 22, 2022); *Malek III* (N.D.N.Y. No. 22-cv-913; E.D.N.Y. No. 22-cv-6538) (filed August 17, 2022); *Malek IV* (N.D.N.Y. No. 22-cv-855; E.D.N.Y. No. 22-cv-6775) (filed September 2, 2022); *Malek V* (E.D.N.Y. No. 22-cv-7815) (filed December 22, 0222).

5416, ECF No. 1 ("Compl.") at 1.   He also alleged that a Family Court clerk improperly rejected some of his filings in the Family Court Proceeding.   *Id.; see also Malek I,* ECF No. 1-1 at 117; *Malek I,* ECF No. 91-4 at 14–16 (Family Court filings).

On November 16, 2021, Plaintiff attended a show-cause hearing in Family Court to address, among other things, his request to modify the Family Court's visitation order so he could attend church with his child.   *Malek I,* ECF No. 91-4 at 28–49 (transcript of hearing).   At that hearing, the judge noted that the temporary order of protection "indicated very clearly that the visits would remain suspended until there's some demonstration by [Plaintiff] that he's . . . in services or mental health assessment," *id*. at 31, and denied Plaintiff's request to modify the visitation order until he complied with those conditions, *id.* at 36.

The Family Court Proceeding concluded on March 31, 2022, and the Family Court's final orders were issued on April 4, 2022.[2]   *Malek I*, ECF Nos. 151-2, 151-3 (final Family Court orders).   Plaintiff concedes that he has not appealed the final order, nor does he intend to. *Malek IV,* ECF No.1 ("Compl.") at 47.   The time to appeal has expired.   *See* N.Y. Family Court Act § 1113 (stating that appeals must be taken within 30 days of receipt of order).

## **PROCEDURAL HISTORY**

On November 11, 2021, before the Family Court Proceeding had concluded, Plaintiff filed his first complaint in the N.D.N.Y., naming eleven Defendants:   (1) The New York State

---

[2]     The Family Court issued two orders:   "Final Order on Petition for Custody and Visitation on Default," *Malek I*, ECF No. 151-2 (granting custody of Plaintiff's child to the child's mother and requiring Plaintiff to comply with a two-year Final Order of Protection), and an "Order of Fact-Finding and Disposition," *Malek I*, ECF No. 151-3 (finding Plaintiff's child "neglected . . . as defined in section 1012 of the Family Court Act").

2

Unified Court System ("UCS"); (2) ACS, a/k/a NYC Children;[3] (3) the New York State Office

of Children and Family Services ("OCFS"); (4) the New York State Office of the Inspector

General ("OIG"); (5) Beverly Stanley, Appeals Coordinator of the Kings County Family Court;

(6) Sheila Poole, Commissioner of OCFS; (7) Janet DiFiore, former Chief Judge of the New

York Court of Appeals; (8) Jacqueline Williams, Kings County Family Court Judge; (9) Rosmil

Almonte, an attorney with ACS; (10) Travis Johnson, a staff attorney with The Legal Aid

Society ("Legal Aid"); and (11) Margaret Ingoglia, Plaintiff's child's mother.   *Malek I*, Compl.

at 1.   The original complaint, liberally construed, alleges, among other things, violations of

Plaintiff's civil rights under 42 U.S.C. § 1983 ("Section 1983"), *id*. at 3, and seeks a court order

that he be allowed to attend church with his child, injunctive relief related to the Family Court

Proceeding, the transfer of his state cases to federal court, and money damages.   *Id*. at 5.   On

February 2, 2022, Plaintiff filed a letter indicating, among other things*,* that he "wish[ed] to also

file an amended / supplemental pleading."   *Malek I*, ECF No. 5.

On February 22, 2022, before the N.D.N.Y. had responded to Plaintiff's request to file a

supplemental pleading, Plaintiff filed a second complaint in a new action.   *Malek v. N.Y. State*

*Unified Ct. Sys., et al.* ("*Malek II*"), No. 22-cv-6515, ECF No. 1 ("Compl.").   Plaintiff's

complaint in *Malek II* named fourteen Defendants—seven of whom were previously named in

*Malek I*,[4] and seven new Defendants:   (1) John Doe/Jane Doe, employees of UCS; (2) Kamil

Boyce, a UCS employee; (3) Ardaisha Hudson, an ACS employee; (4) John Doe, a/k/a "Mistele

---

[3]        NYC Children is another name for ACS.   *See NYC Children,* ADMINISTRATION FOR
CHILDREN'S SERVICES, https://www.nyc.gov/site/acs/index.page (last visited March 9, 2023).

[4]        The *Malek II* Defendants previously named in *Malek I* are:   UCS; ACS; OCFS; Poole;
Williams; Almonte; and Johnson.

Fortune;" (5) Amy Serlin, a private attorney; (6) Legal Aid; and (7) J.P.I., Plaintiff's child's half-sibling.[5]   *Malek II,* Compl. at 1.   The *Malek II* complaint, liberally construed, once again alleges violations of Plaintiff's civil rights under Section 1983, *id*. at 2–3, and seeks the previously sought relief related to Plaintiff's ongoing state court proceedings, as well as custody of his child, *id* at 13.   Specifically, Plaintiff requested that the Court immediately grant him custody of his child, forbid visitation between his child and his child's mother, stay all state court proceedings, refer any criminal violations alleged in the complaint to the U.S. Attorney's Office, and money damages exceeding ACS's annual budget of four billion dollars.   *Id.*

Between April and June 2022, OCFS, UCS, DiFiore, Poole, Williams, and Stanley ("State Defendants"), ACS and Almonte ("City Defendants"), and Defendant Travis Johnson, of Legal Aid, moved the N.D.N.Y. to dismiss the complaint in *Malek I* for improper venue, lack of jurisdiction, and failure to state a claim.   *Malek I*, ECF Nos. 27, 61, 70, 79.   During that same three-month period, Plaintiff filed, among other things, motions to strike, *Malek I*, ECF Nos. 31, 65, 67, a motion for sanctions, *Malek I*, ECF No. 51, and a request for designation as "Next Friend" of Plaintiff's minor child, *Malek I*, ECF No. 64.   Plaintiff also filed repeated motions to supplement or amend the initial complaint.   *Malek I*, ECF Nos. 32, 59, 62, 63.

On June 21, 2022, Plaintiff filed an amended complaint in *Malek II.   Malek II*, ECF No. 11 ("Amend. Compl.").   Six days later, on June 27, 2022, Plaintiff filed a similar, but not identical, proposed amended complaint in *Malek I.   Malek I*, ECF No. 91 ("Amend. Compl.").   Both amended complaints name UCS, OCFS, OIG, the City of New York, ACS, NYC Children, Poole, and DiFiore.   *Malek I*, Amend. Compl. at 16–18; *Malek II*, Amend. Compl. at 7–9.   Both

---

[5]     Plaintiff's child's half-sibling, a minor at the time the complaint was filed, is referred to herein by the initials J.P.I.

amended complaints also add the Excellence Initiative as a Defendant for the first time.[6]   *Id*.

The amended complaint in *Malek I* (but not *Malek II*) names Stanley, Williams, Ingoglia,

Johnson, and Almonte.   *Malek I*, Amend. Compl. at 16–18.   The amended complaint in *Malek

II* (but not *Malek I*) additionally names Letitia James, the New York State Attorney General; the

New York State Attorney General's Office ("NYAG"); Amanda Kuryluk, an attorney with the

NYAG; Jess Dannhauser, current ACS Commissioner; and John Doe/Jane Doe employees at

UCS.[7]   *Malek II*, Amend. Compl. at 7–9.   Both amended complaints, liberally construed, once

again allege violations of Plaintiff's civil rights under Section 1983, as well as new claims of

conspiracy to violate Plaintiff's civil rights under 42 U.S.C. § 1985 ("Section 1985"), and new

allegations of discrimination under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d ("Title

VI").   *Malek I*, Amend. Compl. at 2–5; *Malek II*, Amend. Compl. at 2–5.   The *Malek I* and *II*

amended complaints request nearly identical relief, including:   money damages; the dismissal of

Plaintiff's state court cases; summary judgment in *Malek I*; an extension of time to respond to the

City Defendants' motion to dismiss in *Malek I*; a court order allowing Plaintiff to amend his

complaint in *Malek I*; a court order that he be allowed to attend church with his child; a court

order that Plaintiff be granted custody of his child; and that Defendants turn over all records and

---

[6]     The Excellence Initiative is not a separate entity, but a program within UCS.   *See
Excellence Initiative*, NEW YORK STATE UNIFIED COURT SYSTEM, www.nycourts.gov/excellence-
initiative/ (last visited March 9, 2023) ("The Excellence Initiative involves a detailed and
comprehensive evaluation of current court processes and procedures to determine what is
working well and what needs to be improved.").

[7]     The Amended Complaint in *Malek II* drops John Doe a/k/a "Mistele Fortune" and Kamil
Boyce as Defendants.   The Court construes this as a voluntary dismissal of Plaintiff's claims
against the John Doe Defendant and Defendant Boyce.

documents requested by Plaintiff.   *Malek I*, Amend. Compl. at 37–38; *Malek II*, Amend. Compl.
at 37–38.

Only July 8, 2022, the N.D.N.Y., while recognizing Plaintiff's most recent proposed
amended complaint in *Malek I* as the operative pleading, *Malek I*, ECF No. 97, did not grant
Plaintiff leave to add new parties, *Malek I*, ECF No. 101.   On July 25, 2022, Defendants'
motions to dismiss were fully briefed after the Court gave Defendants leave to supplement their
filings in light of Plaintiff's amended complaint.   *See Malek I*, ECF Nos. 44, 54, 82, 116
(Plaintiff's responses in opposition); *Malek I*, ECF Nos. 105, 108, 109, 110 (Defendants' replies
in support).

On August 17, 2022, Plaintiff commenced a third action.   *Malek v. James* ("*Malek III*"),
No. 22-cv-6538, ECF No. 1 ("Compl.").   The complaint in *Malek III* names 35 Defendants.[8]
Of the named Defendants in *Malek III*, 15 were not previously named in either the original or
amended complaints in *Malek I or II*—(1) Amanda White, Kings County Family Court
Supervising Judge; (2) Andrew Hevesi, New York State Assembly member; (3) Bolade Begho,
ACS; (4) the Brooklyn District Attorney's Office; (5) the New York City Law Department, a/k/a
Office of the Corporation Counsel; (6) David Hansell, former ACS Commissioner; (7) Iyesha
Witherspoon, ACS; (8) Janet Sabel, Legal Aid; (9) Kathryn Conway, NYC Law Department;
(10) Leotta Green, ACS; (11) the Manhattan District Attorney's Office; (12) Nicola Gibson,
ACS; (13) Paula Garcia, ACS; (14) Rashima Ferguson, ACS; and (15) Stephen Louis, NYC Law

---

[8]      Plaintiff claims to name 36 Defendants, *Malek III*, Compl. at 21, but two Defendants—
ACS and NYC Children—are the same entity.   *See supra* n.3.

Department.[9]   *Id*. at 21–28.   Plaintiff's complaint in *Malek III* repeatedly references *Malek I*. *See, e.g., id*. at 6, 8, and 10.   The complaint in *Malek III*, liberally construed, once again alleges violations of Plaintiff's civil rights under Section 1983, a conspiracy to violate Plaintiff's civil rights under Section 1985, and discrimination claims under Title VI.   *Id.* at 12–17.   The complaint also asserts new claims alleging violations of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., and/or the Rehabilitation Act ("RA"), 29 U.S.C. § 794. *Id.* at 8.   In *Malek III*, Plaintiff requests relief similar to what he seeks in his prior complaints. *Id.* at 28–30.

On September 2, 2022, a little over a week after filing his complaint in *Malek III*, Plaintiff commenced a fourth action.   *Malek v. N.Y. State Unified Ct. Sys., et al.* ("*Malek IV*"), No. 22-cv-6775, ECF No. 1 ("Compl.").   The complaint in *Malek IV* names 27 Defendants[10]— nine of whom were not previously named in *Malek I*, *II*, or *III*:   (1) Christopher Escobar, ACS; (2) David Thayer, NYC Law Department; (3) Janie Groff, a licenced social worker with Sun River Health; (4) Mark Galen Toews, NYC Law Department; (5) Patrick Synmoie, General Counsel at the NYC Clerk's Office; (6) Robert Russ Lachanse, a former employee with Sun River Health; (7) Shilpika Varma, a psychiatrist with Sun River Health; (8) Sylvia O. Hinds

---

[9]      The *Malek III* Defendants previously named in *Malek I* and *II* are:   ACS; Almonte; the City of New York; Dannhauser; DiFiore; the Excellence Initiative; Hansell; Hudson; J.P.I.; Margaret Ingoglia; James; Johnson; Legal Aid; NYAG; OCFS; OIG; UCS; Poole; Serlin; and Williams.

[10]      Plaintiff claims to name 28 Defendants in *Malek IV*, *id*. at 15, but two Defendants—ACS and NYC Children—are the same entity.   *See supra* n.3.

Radix, NYC's Corporation Counsel; and (9) Sun River Health.[11]   *Id.* at 18–23.   The new

Defendants appear to either be additional attorneys involved in Plaintiff's case or individuals

involved with the creation of psychiatric reports that Plaintiff claims are "fraudulent" and

"false."   *Id.* at 4–10.   The complaint in *Malek IV*, liberally construed, once again alleges

violations of Plaintiff's civil rights under Section 1983, a conspiracy to violate Plaintiff's civil

rights under Section 1985, and discrimination claims under Title VI, *id.* at 9–15, and requests

relief similar to what he seeks in his prior complaints, *id.* at 57.

On September 9, 2022, the N.D.N.Y granted, in part, Defendants' motions to dismiss in

*Malek I* and transferred the case to the E.D.N.Y.[12]   *Malek v. N.Y. State Unified Ct. Sys.*, No. 21-

cv-1230, 2022 WL 4120267, at *1 (N.D.N.Y. Sept. 9, 2022); *Malek I*, ECF No. 135.   That same

day, the N.D.N.Y. ordered Plaintiff to show cause in *Malek II*, *III*, and *IV* why those cases should

not also be transferred to the E.D.N.Y.   *Malek II*, ECF No. 21; *Malek III*, ECF No. 10; *Malek

IV*, ECF No. 5.   Plaintiff responded by filing identical letters in all three cases indicating that he

would not respond to the show-cause orders.   *Malek II*, ECF No. 24 at 1; *Malek III*, ECF No. 14

at 1; *Malek IV*, ECF No. 15 at 1.   All three cases were subsequently transferred to this district on

October 27, 2022.   *Malek II*, ECF No. 28; *Malek III*, ECF No. 16; *Malek IV*, ECF No. 19.

On October 21, 2022—before *Malek II*, *III*, and *IV* were transferred to this district—the

remaining Defendants in *Malek I* filed renewed motions to dismiss Plaintiff's complaint for lack

---

[11]   The *Malek IV* Defendants previously named in the earlier-filed actions are:   ACS;
Almonte; the City of New York; Dannhauser; DiFiore; Excellence Initiative; Garcia; Hansell;
Hudson; Margaret Ingoglia; James; Johnson; Legal Aid; OCFS; OIG; UCS; Poole; and Williams.

[12]   The N.D.N.Y. court only dismissed Plaintiff's claims against the Defendants who resided
in the Northern District in *Malek I*, the rest of the claims were transferred to this district without
a decision.   *See Malek*, 2022 WL 4120267, at *26; *Malek I*, ECF No. 135 at 26.

of jurisdiction and for failure to state a claim.   *Malek I*, ECF Nos. 151, 152, 153, 154.   Plaintiff

then filed his responses in opposition to the motions to dismiss between late November and

December 2022.[13]   *Malek I,* ECF Nos. 183, 190, 191.   Defendants Johnson and the State

Defendants filed their replies in support of their motions to dismiss in December 2022.   *Malek I,*

ECF Nos. 194, 195.   The City Defendants did not file a reply.   In addition, on December 14,

2022, the City Defendants filed a motion to dismiss in *Malek IV*.   *Malek IV,* ECF No. 21.

On December 22, 2022, after the motions to dismiss in *Malek I* had been fully briefed,

Plaintiff filed a new complaint in his fifth, and final, action.   *Malek v. Ingoglia* ("*Malek V*"), No.

22-cv-7815, ECF No. 1 ("Compl.").   Plaintiff filed the complaint in *Malek V* on behalf of

himself and his minor child.   *Id*. at 1.   The complaint in *Malek V* named seven Defendants,[14]

including two new Defendants not previously named in either the original or amended

complaints in *Malek I*, *II*, *III*, or *IV*—the New York City Police Department ("N.Y.P.D.") and

Anderson Thimote, a N.Y.P.D. Detective.[15]   *Id*. 10–11.   Plaintiff's complaint in *Malek V*

repeatedly references his complaints in his other federal cases.   *See, e.g., Malek V*, Compl. at

12–14.   Liberally construed, the complaint in *Malek V* once again alleges violations of

Plaintiff's civil rights under Section 1983, a conspiracy to violate Plaintiff's civil rights under

---

[13]      Plaintiff also filed a motion for summary judgment and partial summary judgment that
touched on the substance of Defendants' motions to dismiss.   *Malek I*, ECF Nos. 172, 182.
Defendants have filed their responses in opposition to Plaintiff's motions for summary judgment
and partial summary judgment.   *Malek I*, ECF Nos. 175, 176, 177, 192, 193.   Plaintiff also filed
numerous letters on the docket addressing the substance of the motions to dismiss.   *See, e.g.,
Malek I*, ECF Nos. 159; 160.

[14]      Plaintiff claims to name eight Defendants, *id*. at 10, but two Defendants—ACS and NYC
Children—are the same entity.   *See supra* n.3.

[15]      The *Malek V* Defendants previously named in the earlier-filed actions are:   ACS/NYC
Children; the Brooklyn D.A.'s Office; the City of New York; J.P.I.; and Margaret Ingoglia.

Section 1985, and discrimination claims under Title VI.  *Id*. at 12–23.   The complaint in *Malek V*, while more targeted than Plaintiff's previous complaints, nevertheless focuses on conduct that arises out of his previous cases—Plaintiff, in effect, alleges that he is being maliciously prosecuted for supposedly violating a protective order when attempting to serve Defendant Margaret Ingoglia in *Malek IV*.  *Id*.   On February 13, 2023, Defendants ACS, the City of New York, the N.Y.P.D., and Detective Thimote filed a motion to dismiss the complaint in *Malek V*. *Malek V*, ECF No. 14.

## CONSOLIDATION

Federal Rule of Civil Procedure 42 states that "[i]f actions before the court involve a common question of law or fact, the court may:   (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."   Fed. R. Civ. P. 42(a).   "The trial court has broad discretion to determine whether consolidation is appropriate."   *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir. 1990).   Generally, consolidation is favored if it serves the interests of judicial economy.   *Id.* at 1285.   "Specifically, consolidation of cases with common questions of law or fact is favored to avoid unnecessary costs or delay, and to expedite trial and eliminate unnecessary repetition and confusion."   *Morinville v. Dzurenda*, No. 21-cv-6088, 2022 WL 203989, at *3 (E.D.N.Y. Jan. 24, 2022).[16]

Here, all the complaints filed by Plaintiff:   (i) arise from the Family Court Proceeding; (ii) allege deprivations of his constitutional rights and violations of federal anti-discrimination laws, *Malek I*, Amend. Compl. at 2–5; *Malek II*, Amend. Compl. at 2–5; *Malek III*, Compl. at

---

[16]      Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits citations, internal quotation marks, and footnotes.

12–17; *Malek IV*, Compl. at 9–15; *Malek V*, Compl. at 12–23; and (iii) seek similar monetary and injunctive relief, *Malek I*, Amend. Compl. at 37–38; *Malek II*, Amend. Compl. at 37–38; *Malek III*, Compl. at 28–30; *Malek IV*, Compl. at 57; *Malek V*, Compl. at 25.   While there is not perfect overlap among the Defendants in each of the actions, "[c]ases may be consolidated even where certain defendants are named in only one of the complaints."  *Jacobs v. Castillo*, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009).   Accordingly, the Court orders that Plaintiff's operative complaints in *Malek I–V* be consolidated pursuant to Rule 42 into the first-filed case, *Malek I* (No. 22-cv-5416).

## LEGAL STANDARD

The Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest claims that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original). However, the "special solicitude" in *pro se* cases, *id.* at 475, has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief "that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true.  *Id*.   However, the Court does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions.  *Twombly*, 550 U.S. at 555.   After separating legal conclusions from well-pleaded

11

factual allegations, the Court must determine whether those facts make it plausible—not merely

possible—that the pleader is entitled to relief.   *Id.*

## **DISCUSSION**

Collectively, the operative pleadings in these actions name 48 Defendants—35 individual

Defendants[17] and 13 entity Defendants.[18]   Plaintiff asserts federal question jurisdiction pursuant

to 28 U.S.C. § 1331.[19]   Plaintiff's claim of federal question jurisdiction is premised on alleged

---

[17]      Individual Defendants:   (1) Amanda White, Kings County Family Court Supervising
Judge; (2) Amanda Kuryluk, Assistant Attorney General; (3) Amy Serlin, Legal Aid; (4)
Anderson Thimote, N.Y.P.D. Detective; (5) Andrew Hevesi, New York State Assembly; (6)
Ardaisha Hudson, ACS; (7) Beverly Stanley, Appeals Coordinator of the Kings County Family
Court; (8) Bolade Begho, Legal Aid; (9) Christopher Escobar; (10) David Hansell, former ACS
Commissioner; (11) David Thayer, NYC Law Department; (12) Iyesha Witherspoon, Legal Aid;
(13) Jacqueline Williams, Family Court Judge; (14) Janet DiFiore, former Chief Judge of the
New York Court of Appeals; (15) Janet Sabel, Legal Aid; (16) Janie Groff; (17) Jess
Dannhauser, ACS Commissioner; (18) J.P.I.; (19) Kathryn Conway, NYC Law Department; (20)
John Doe/Jane Doe, UCS; (21) Leotta Green, ACS; (22) Letitia James, New York AG; (23)
Margaret Ingoglia; (24) Mark Galen Toews, NYC Law Department; (25) Nicola Gibson, ACS;
(26) Patrick Synmoie, General Counsel at the Office of the City Clerk; (27) Paula Garcia, ACS;
(28) Rashima Ferguson, ACS; (29) Robert Russ Lachanse; (30) Rosmil Almonte, ACS; (31)
Sheila Poole, OCFS Commissioner; (32) Shilpika Varma; (33) Stephen Louis, NYC Law
Department; (34) Sylvia O. Hinds Radix, NYC's Corporation Counsel; and (35) Travis Johnson.

[18]      Entity Defendants:   (1) ACS/NYC Children; (2) the Brooklyn D.A.'s Office; (3) the City
of New York; (4) the Excellence Initiative; (5) Legal Aid; (6) the Manhattan DA's Office; (7) the
Office of the Corporation Counsel; (8) the N.Y.P.D.; (9) the NYAG; (10) OCFS; (11) OIG; (12)
UCS; and (13) Sun River Health.

[19]      Plaintiff additionally asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332, as one of
the Defendants allegedly resides in New Jersey.   *See Malek III*, Compl. at 12; *Malek IV*, Compl.
at 16.   However, "[f]or a district court to have diversity jurisdiction, there must be complete
diversity of citizenship, which means that no plaintiff is a citizen of the same state as any
defendant."   *Lehman v. Discovery Commc'ns, Inc.*, 217 F. Supp. 2d 342, 347 (E.D.N.Y. 2002).
Because Plaintiff is a resident of New York, and every complaint filed in *Malek I–V* contains at
least one Defendant who is also a resident of New York, diversity jurisdiction does not exist.
*See Malek I*, Amend. Compl. at 15–18; *Malek II*, Amend. Compl. at 6–9; *Malek III*, Compl. at
20–28; *Malek IV*, Compl. at 17–23; *Malek V*, Compl. at 9–12.
In addition, to the extent that Plaintiff raises state law claims, the Court declines to
exercise supplemental jurisdiction over those claims.   "District courts may use their discretion in

violations by Defendants of Section 1983, Section 1985, Title VI, the ADA, and the RA.[20]

*Malek I*, Amend. Compl. at 2–5; *Malek II*, Amend. Compl. at 2–5; *Malek III*, Compl. at 12–17;

*Malek IV*, Compl. at 9–15; *Malek V*, Compl. at 12–23.

## I. Plaintiff Cannot Bring Suit on Behalf of His Minor Child

The complaint in *Malek V* is captioned as *Robert Malek, Robert Malek c/o M.M.*[21] *v.*

*Margaret Ingoglia*, as Plaintiff seeks to bring suit on behalf of himself and his minor child.

*Malek V*, ECF No. 1 at 1.   Plaintiff has not filed a request for designation as a "next friend" to

his minor child, pursuant to Federal Rule of Civil Procedure 17(c).   *Id*.   However, even if he

had, the request would be denied.   As Plaintiff was informed by the Court in *Malek I*, "the well

established general rule in the Second Circuit has been that a parent not admitted to the bar

cannot bring an action *pro se* in federal court on behalf of his or her child."   *Malek*, 2022 WL

4120267, at *4; *Malek I*, ECF No. 135 at 4 (citing *Tindall v. Poultney High Sch. Dist.*, 414 F.3d

281, 284 (2d Cir. 2005)).   Despite Plaintiff being warned that he could not proceed *pro se* on

behalf of his minor child, Plaintiff has not obtained counsel since the Court's decision in

---

deciding whether to exercise supplemental jurisdiction over state law claims after dismissing a plaintiff's only federal claims, so long as the federal claims were not dismissed for lack of subject matter jurisdiction."   *Probiv v. PayCargo LLC*, No. 22-cv-02907, 2023 WL 159788, at *5 (E.D.N.Y. Jan. 11, 2023); 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); *see also Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021).

[20]     Plaintiff also raises "Trump Executive Order 13899" as a cause of action in each of his complaints.   *Id*.   However, because "[n]o private right of action exists to enforce obligations imposed by executive orders," *Jimenez v. Chase Bank*, No. 18-cv-3297, 2019 WL 919626, at *5 (S.D.N.Y. Jan. 28, 2019), *report and recommendation adopted*, No. 18-cv-3297, 2019 WL 917210 (S.D.N.Y. Feb. 25, 2019), any claims under Executive Order 13899 are dismissed.

[21]     M.M. is the designation the Court and Plaintiff have used to refer to his minor child.

September 2022.   Rather, he has made it clear from his filings he intends to proceed *pro se*.
*See Malek V,* ECF No. 11 at 4–5.

Nothing has changed since the N.D.N.Y. issued its decision back in September 2022.
Plaintiff is still not allowed to bring suit on behalf of his minor child *pro se*.   Therefore, any
claims raised by Plaintiff on his child's behalf are dismissed.

## II.   *Younger* **Abstention**

As an initial matter, Plaintiff seeks this Court's intervention in a number of allegedly
pending state court proceedings or prosecutions by requesting injunctive relief in the form of an
order asking to either dismiss or stay Plaintiff's cases in state court, or to stop Plaintiff from
being prosecuted for violating a protective order.   *See Malek I*, Compl. at 37; *Malek II*, Compl.
at 37; *Malek III,* Compl. at 28; *Malek IV,* Compl. at 55; *Malek V*, Compl. at 25.   Defendants
argue that abstention under *Younger v. Harris*, 401 U.S. 37 (1971), precludes the Court from
enjoining any ongoing state proceeding.   *See Malek I*, ECF Nos. 151, 152, 154.

In *Younger*, the Supreme Court held that a federal court may not enjoin a pending state
court criminal proceeding in the absence of special circumstances.   401 U.S. at 41.   While
*Younger* abstention has been extended to civil actions, *see Kaufman v. Kaye*, 466 F.3d 83, 86 (2d
Cir. 2006), it "applies only to a narrow class of state civil proceedings."   *Cavanaugh v. Geballe*,
28 F.4th 428, 430 (2d Cir. 2022).   Specifically, "district courts should abstain from exercising
jurisdiction only in three exceptional circumstances involving (1) ongoing state criminal
prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving
certain orders uniquely in furtherance of the state courts' ability to perform their judicial

functions." *Falco v. Justs. of the Matrim. Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427

(2d Cir. 2015).

Here, it appears that both related state cases in the underlying Family Court Proceeding

have concluded, *see Malek I*, ECF Nos. 151-2, 151-3, and no appeal has been filed, *Malek IV,*

Compl. at 47.   The Court, therefore, does not need to reach the question of whether *Younger*

abstention is appropriate, as Plaintiff has not identified any ongoing state proceeding for the

Court to enjoin.

Plaintiff additionally alleges that there is an ongoing criminal prosecution against him.

*Malek V*, Compl. at 25.   However, Plaintiff only alleges that he was contacted by Detective

Thimote, not that he was ever arrested or prosecuted.   *Id*. at 12–13.   Plaintiff has thus failed to

allege sufficiently that there is an ongoing criminal proceeding against him.   Therefore, once

again, the Court does not need to reach the question of whether *Younger* abstention applies here.

Because Plaintiff has failed to allege that there are any pending state court proceedings,

the Court denies as moot his requests to enjoin state court proceedings.

## III.   *Rooker-Feldman* Doctrine

Defendants argue that the Court lacks jurisdiction to hear this case under the *Rooker-*

*Feldman* doctrine, which holds that lower federal courts lack jurisdiction "to consider suits

which seek to overturn state court judgments."[22]   *Fernandez v. Turetsky*, No. 12-cv-4092, 2014

---

[22]     Defendants further argue that the domestic relations exception, divests this Court of
subject matter jurisdiction.   However, this exception to subject matter jurisdiction for federal
courts does not apply in federal-question cases.   *Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d
Cir. 2019).   As Plaintiff invokes federal-question jurisdiction, the domestic relations exception
does not apply.

WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016).   For the

*Rooker-Feldman* doctrine to apply:

> First, the federal-court plaintiff must have lost in state court.
> Second, the plaintiff must complain of injuries caused by a state-
> court judgment. Third, the plaintiff must invite district court
> review and rejection of that judgment.   Fourth, the state-court
> judgment must have been rendered before the district court
> proceedings commenced.

*Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

All four requirements are met here.   First, Plaintiff lost in Family Court when that court

issued its final orders granting his child's mother custody of their minor child and entering an

order of protection that directed him to refrain from seeing his child except under limited

circumstances.   *Malek I*, ECF No. 151-2 (final Family Court order).   Second, Plaintiff explicitly

complains of injuries that he sustained as a result of the final Family Court orders.   *See, e.g.,*

*Malek I*, Amend. Compl. at 23; *Malek IV*, Compl. at 18.   Third, most of the relief Plaintiff

seeks—for example, (i) being granted custody of his child, *Malek I*, Amend. Compl at 38; *Malek*

*II*, Amend. Compl. at 38; *Malek III*, Compl. at 28; *Malek IV*, Compl. at 56, or (ii) reversing the

state order of protection against him, *Malek III*, Compl. at 28—invites this Court to review and

reject the final Family Court order.   Fourth, although Plaintiff's initial complaints in *Malek I* and

*Malek II* were filed before the final Family Court orders were filed on April 4, 2022, Plaintiff

amended his complaint in both actions after that date.   *Malek I*, Amend. Compl. (filed June 21,

2022); *Malek II*, Amend. Compl. (filed June 27, 2022).   Thus, because all of the operative

complaints in Plaintiff's actions were filed after the Family Court's April 4, 2022, final orders,

the fourth *Rooker-Feldman* requirement is satisfied.

However, the district court should read a *pro se* plaintiff's complaint to "raise the

strongest arguments that they suggest."   *Triestman*, 470 F.3d at 474.   Here, the Court finds that

Plaintiff's complaints could also be read more narrowly to seek money damages for violations of his due process rights that occurred while Plaintiff was litigating his cases in state and federal court.   Therefore, even though the Court concludes that the *Rooker-Feldman* doctrine applies in this case, it chooses also to address the narrower reading of Plaintiff's complaints on the merits.

## IV.   Plaintiff Fails to State a Claim Under Section 1985, Title VI, the ADA, or the RA

### A.  Section 1985

"To state a cause of action under § 1985, a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and; (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 380–81 (E.D.N.Y. 2013).   "To assert a conspiracy under Section 1985, a plaintiff must [also] provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Masters v. Mack*, No. 22-cv-6582, 2022 WL 17961211, at *6 (E.D.N.Y. Dec. 27, 2022).

Plaintiff has failed to plead any facts to support his allegations that Defendants acted in concert to deprive him of the equal protections of the law.   Plaintiff appears to allege that the individual and entity Defendants involved in the Family Court Proceeding or subsequent federal cases, are "direct conspirators of the harm to my [child] and I." *Malek III*. Compl. at 8, 10. While Plaintiff alleges that some of the Defendants worked together given their roles and functions, he has failed to allege any fact that would permit the Court to infer that the goal of these Defendants was in any way nefarious or motivated by any improper animus.   For example, Plaintiff alleges that the original neglect petition filed against him in Kings County Family Court

and the final Family Court order that terminated his parental rights evince a Section 1985 conspiracy against him.   *See Malek IV*, Compl. at 42; *Malek I*, Amend. Compl. at 32.   As supposed proof of this conspiracy, Plaintiff attaches, among other things, court documents such as the original neglect petition, *see Malek I*, ECF No. 91-1 (Exhibit A), the amended neglect petition, *id.* (Exhibit H), transcripts of the Family Court Proceeding, *id.* (Exhibits Q, R), and the final Family Court order, *id*. (Exhibit C), along with a number of Plaintiff's own emails and court filings, *id.* (Exhibits C, G, I–P, T, V–Z), most of which went unanswered.

As an initial matter, Plaintiff's own emails and filings cannot support an inference that a conspiracy existed, even if they went unanswered, as they provide no factual support of a meeting of the minds between or among Defendants.   As to the court documents that Plaintiff cites—certainly, the Family Court Proceeding, from the filing of the neglect petition to the issuance of the final order, required some meeting of the minds to adjudicate.   However, despite Plaintiff's conclusory allegations of conspiracy, he provides no allegation that would permit the Court reasonably to infer that the individuals or entities involved in the Family Court Proceeding were doing so with the goal of depriving Plaintiff of his constitutional rights, rather than, for example, out of concern for the welfare of his minor child.   "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."   *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983).   Accordingly, Plaintiff's Section 1985 claims are dismissed.[23]

---

[23]     Plaintiff also alleges that a number of Defendants violated his rights under Section 1986, 42 U.S.C. § 1986 ("Section 1986"), "which proscribes knowingly failing to prevent a Section 1985 conspiracy which such person by reasonable diligence could have prevented."   *Jean-Baptiste v. Montway LLC*, No. 22-cv-5579, 2022 WL 11213581, at *2 (E.D.N.Y. Oct. 19, 2022). "[A] § 1986 claim must be predicated on a valid § 1985 claim."   *See Brown v. City of Oneonta*,

18

### B. Title VI

Plaintiff alleges violations of Title VI.   "In order to establish a Title VI violation, a plaintiff must show, through specific factual allegations, that (1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's action."   *Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 527 F. Supp. 3d 625, 632 (S.D.N.Y. 2021), *aff'd*, No. 21-cv-1642, 2022 WL 710896 (2d Cir. Mar. 10, 2022).

As an initial matter, "Title VI covers only those claims of discriminatory conduct where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary."   *McKnight v. Middleton*, 699 F. Supp. 2d 507, 522 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011).   Many of the Defendants here, because they are either individuals or state agencies, cannot be sued under Title VI.   *Id.* at 523 (holding that Title VI does not apply to "the State of New York, all state officials in their official capacities, and the County of Kings Family Court"); *Otegbade v. N.Y.C. Admin. for Child. Servs.*, No. 12-cv-6298, 2015 WL 851631, at *2 n.5 (S.D.N.Y. Feb. 27, 2015) ("Plaintiff . . . cannot sue individuals under Title VI").

A city agency might be liable under Title VI if it received federal funding for a program or activity from which Plaintiff was denied participation or assistance.   The only mention of federal funds in the complaints is Plaintiff's allegation that "ACS [stole] 26 billion from the federal government."   *Malek IV*, Compl. at 18.   However, Plaintiff fails to allege what ACS

---

221 F.3d 329, 341 (2d Cir. 2000).   Because Plaintiff has failed to state a valid Section 1985 claim, he has also necessarily failed to state a claim under Section 1986.   Accordingly, all of Plaintiff's Section 1986 claims are dismissed.

program he was excluded from or denied the benefits of.   Thus, the allegations in the complaints are insufficient to give rise to a reasonable inference that ACS is liable under Title VI.   *See Assoko v. City of New York*, 539 F. Supp. 2d 728, 740 (S.D.N.Y. 2008) (finding that plaintiffs failed to allege claim under Title VI where complaint "fail[ed] to specify what federally funded program or activity discriminated against them").

However, even if Plaintiff had sued an appropriate entity, his complaint nevertheless fails to set forth any factual support for any of the necessary elements of a Title VI claim.   While Plaintiff repeatedly insists that Defendants actions were fueled by antisemitism, *see, e.g., Malek II*, Amend. Compl, at 14, the only support he provides for that assertion is an excerpt from a document titled "Investigation Progress Notes," which, under the section "Demographics/Cultural/Language/Immigration," states "[Child's Mother] is Irish-American and [Plaintiff] is Jewish."   *Malek I*, ECF No. 91-1 (Exhibit D).   This allegation does not permit the Court to infer improper animus or discrimination—it is simply a benign observation of Plaintiff's ethnicity.   Courts in this Circuit have held that "when race plays a purely descriptive role . . . and there are no other facts tending to suggest that racial animus was at play, Plaintiff cannot make out a claim for race discrimination on this basis alone."   *See Dickerson v. BPP PCV Owners LLC*, No. 21-cv-9003, 2022 WL 4538281, at *5 (S.D.N.Y. Sept. 28, 2022); *see also Brown*, 221 F.3d at 338 (holding that plaintiffs failed to state an actionable claim under Equal Protection Clause where police relied on description of perpetrator's race).

Accordingly, all of Plaintiff's Title VI claims are dismissed.

## C.  ADA and RA

Plaintiff's only allegation as it relates to the ADA or RA is that "I was not allowed to visit with my child because I have [sic] COVID *violating the ADA Act and/or Rehabilitation*

*Act*." *Malek III*, Compl. at 8 (emphasis in original)*.*

"Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021); 42 U.S.C. § 12132. "Similarly, the Rehabilitation Act requires specified otherwise qualified disabled individuals receive reasonable accommodations from programs receiving federal financial assistance." *Milner v. Lamont*, No. 20-cv-1245, 2022 WL 2110971, at *11 (D. Conn. June 9, 2022); 29 U.S.C. § 794.   The only distinction between the two acts is that "the RA applies to entities receiving federal financial assistance, while Title II of the ADA applies to all public entities." *Id.* at *11 n.54.   Where that distinction is irrelevant, as it is here, courts treat claims under the ADA and RA identically.   *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Here, Plaintiff, by his own admission, had COVID-19.   *Malek III*, Compl. at 8.   ACS asked Plaintiff to take "a COVID-19 screening and test negative" before resuming in-person visits.   *Malek III*, ECF 1-2 at 32.   Plaintiff refused to comply with that request.   *Id.* at 31; *see generally id*. at 22–32 (Exhibits M, N).   Allegations that a plaintiff was excluded or quarantined after testing positive for COVID-19 are insufficient to allege plausibly that "disability—as opposed to the risk that he would infect other[s] . . . with COVID-19" was the reason for that exclusion.   *Milner*, 2022 WL 2110971, at *13; *see also Harper v. Cuomo*, No. 21-cv-0019, 2021 WL 1821362, at *15 (N.D.N.Y. Mar. 1, 2021), *report and recommendation adopted*, No. 21-cv-0019, 2021 WL 1540483 (N.D.N.Y. Apr. 20, 2021) (finding that disparate treatment of COVID-19 positive individuals to prevent spread of COVID-19 does not violate ADA or RA).

21

Accordingly, the Court finds that Plaintiff's allegations fail to state plausibly a claim under the ADA or the RA, and therefore all of Plaintiff's claims under those statutes are dismissed.

## V.   Plaintiff's Section 1983 Claims

Section 1983 provides, in relevant part, that:   "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."   42 U.S.C. § 1983.   Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."   *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).   To state a claim under Section 1983, a plaintiff must allege two essential elements:   "(1) that the defendants deprived him of a right secured by the Constitution or laws of the United States; and (2) that they did so under color of state law." *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001).

### A.  NYAG, OCFS, OIG, UCS, and the Excellence Initiative

Plaintiff's brings Section 1983 claims against Defendants NYAG, OCFS, OIG, UCS, and the Excellence Initiative.   "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity."   *DeRouseau v. Fam. Ct.*, No. 21-cv-8716, 2022 WL 1747859, at *2 (S.D.N.Y. May 31, 2022).   "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state

22

instrumentalities that are, effectively, arms of a state." *Id*.   The states' Eleventh Amendment

immunity is not abrogated in Section 1983 actions.   *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

Defendants NYAG, OCFS, OIG, UCS, and the Excellence Initiative (an initiative within

UCS), are considered arms of the state of New York, and thus entitled to sovereign immunity.

*See DeRouseau*, 2022 WL 1747859, at *2 (holding UCS and Family Court entitled to Eleventh

Amendment immunity); *Golston v. Cortese*, No. 21-cv-914, 2022 WL 2657290, at *6 (N.D.N.Y.

Apr. 1, 2022), *report and recommendation adopted*, No. 21-cv-914, 2022 WL 2071773

(N.D.N.Y. June 9, 2022) (holding that the NYAG is entitled to Eleventh Amendment immunity);

*Iosilevich v. N.Y.C. Admin. for Child. Servs.*, No. 21-cv-466, 2021 WL 3472647, at *2 (E.D.N.Y.

Aug. 6, 2021) ("Eleventh Amendment bars plaintiff's claims against the OCFS"); *Pena v. Armor

Corr. Health Inc.*, No. 16-cv-1554, 2016 WL 4468241, at *5 (E.D.N.Y. Aug. 24, 2016) ("As

agencies or arms of the State of New York, the NYSCOC, the NYSDOCS, and the NYS

Inspector General's Office are immune from suit under the Eleventh Amendment.").

Accordingly, Plaintiff's Section 1983 claims against Defendants NYAG, OCFS, OIG,

UCS, and the Excellence Initiative are dismissed.

**B.  DiFiore, James, Poole, White, and Kuryluk**

Plaintiff brings Section 1983 claims against Janet DiFiore, former Chief Judge of the

New York Court of Appeals; Letitia James, New York Attorney General; Shiela Poole,

Commissioner of OCFS; Amanda White, Kings County Family Court Supervising Judge; and

Amanda Kuryluk, Assistant New York Attorney General, in their "personal and professional"

capacities.[24]  *Malek I*, Amend. Compl. at 16–18; *Malek II*, Amend. Compl. at 7–9; *Malek III*,

Compl. at 21–28; *Malek IV*, Compl. at 18–23.

    To the extent Plaintiff's claims are brought against these Defendants in their professional

(*i.e.*, official) capacities, they are barred by the Eleventh Amendment.   "[If] a state official is

sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and

the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."

*Ying Jing Gan v. City of New York*, 996 F. 2d 522, 529 (2d Cir. 1993); *see also Carvel v. Cuomo*,

357 F. App'x 382, 384 (2d Cir. 2009) (holding Eleventh Amendment barred federal suit against

New York AG in official capacity).

    Defendant Kuryluk is an Assistant Attorney General, who litigated on behalf of State

Defendants in two of the above-captioned actions.   To the extent Plaintiff's claims are brought

against Kuryluk in her personal capacity, they are barred by the doctrine of absolute immunity.

*Malek I*, ECF No. 41 (notice of appearance); *Malek II*, ECF No. 23 (notice of appearance).   "As a

general principle, a government attorney is entitled to absolute immunity when functioning as an

advocate of the state in a way that is intimately associated with the judicial process."

*Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006).   The Second Circuit has found that

this includes situations where the attorney is defending the state in civil litigation, as is the case

here.   *Id.* ("We have expanded this principle to apply to the functions of a government attorney

---

[24]    "In an official-capacity claim, the relief sought is only nominally against the official and
in fact is against the official's office and thus the sovereign itself.   This is why, when officials
sued in their official capacities leave office, their successors automatically assume their role in
the litigation.   The real party in interest is the government entity, not the named official.
Personal-capacity suits, on the other hand, seek to impose individual liability upon a government
officer for actions taken under color of state law.   Officers sued in their personal capacity come
to court as individuals, and the real party in interest is the individual, not the sovereign."   *Lewis
v. Clarke*, 581 U.S. 155, 162–163 (2017).

that can fairly be characterized as closely associated with the conduct of litigation or potential litigation in civil suits—including the defense of such actions."). As Plaintiff's allegations against Kuryluk in her personal capacity are intimately associated with her duties as a government attorney litigating on behalf of the government, *see, e.g., Malek II*, Amend. Compl. at 27 ("Kuryluk is defending many of the defendants here in 21 CV 1230 [*Malek I*]"), the Court finds that she has absolute immunity from suit under Section 1983.

To support a Section 1983 claim against DiFiore, James, Poole and White in their personal capacities, Plaintiff must plausibly allege "personal involvement." "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013). "To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d. 609, 620 (2d Cir. 2020). "Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law." *Oliver v. Punter*, No. 22-cv-3580, 2022 WL 3228272, at *3 (E.D.N.Y. Aug. 10, 2022).

Here, Plaintiff fails to allege that Defendants DiFiore, James, Poole or White were personally involved in either the Family Court Proceeding or Plaintiff's subsequent federal lawsuits related to that proceeding. Rather, Plaintiff's allegations are, in sum, that these individual state Defendants either "allowed" the Family Court Proceeding to continue, did not respond to Plaintiff when contacted about that proceeding, or did not provide Plaintiff with documents when he requested them. *See Malek II*, Amend. Compl. at 22–23; *Malek III,* Compl. at 20; *Malek II*, Amend. Compl. at 30–31; *Malek III*, Compl. at 6, 11. As the N.D.N.Y. court

25

already informed Plaintiff in its earlier decision, "the failure to respond to Plaintiff[] . . . does not, without more, plausibly suggest that Defendants . . . were personally involved in the alleged violations of Plaintiff's constitutional rights." *Malek*, 2022 WL 4120267, at *11, *Malek I*, ECF No. 135 at 11.

Accordingly, Plaintiff's Section 1983 claims against Defendants DiFiore, James, Poole, White, and Kuryluk are dismissed.

### C. Williams, Stanley, John/Jane Doe

Plaintiff brings Section 1983 claims against Jacqueline Williams, a New York Family Court Judge; Beverly Stanley, the Appeals Coordinator of the Kings County Family Court; as well as John/Jane Doe clerks who work for UCS.   All claims brought against these individuals were brought in their "personal and professional" capacities.   *Malek I*, Amend. Compl. at 16–18, *Malek II*, Amend. Compl. at 7–9; *Malek III*, Compl. at 21–28, *Malek IV*, Compl. at 18–23.

To the extent Plaintiff's claims are brought against these Defendants in their official capacities, they are barred by the Eleventh Amendment.   *See DeRouseau*, 2022 WL 1747859, at *2; *Ying Jing Gan*, 996 F. 2d at 529.

To the extent Plaintiff's claims are brought against these Defendants in their personal capacities, those claims are barred by the doctrine of absolute judicial immunity.   "American jurisprudence has adopted the common law rule that judges are absolutely immune from civil damage suits relating to the exercise of their judicial functions."   *Fariello v. Campbell*, 860 F. Supp. 54, 67 (E.D.N.Y. 1994).   Judicial immunity applies to acts that are "judicial in nature."   *Dupree v. Bivona*, No. 07-cv-4599, 2009 WL 82717, at *1 (2d Cir. Jan. 14, 2009).   "In determining whether an act is judicial in nature, we examine whether (1) that act is one normally performed by a judge, and (2) the parties were dealing with the judge in his or her judicial

26

capacity." *Id.* "Judicial immunity also extends to certain others who perform functions closely associated with the judicial process." *See Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). For example, it extends to law clerks when they are assisting judges performing judicial functions, such as fielding requests for documents from litigants. *Id.*

Plaintiff's claims against Judge Williams relate to actions she took while acting as the presiding judge of the Family Court Proceeding. *Malek IV*, Compl. at 47. These actions were clearly "judicial in nature." *Dupree*, 2009 WL 82717, at *1. Plaintiff's claims against Stanley relate to her answering questions and handling filings related to the Family Court Proceeding. *Malek I*, Amend. Compl. at 12–13. Finally, Plaintiff's claims against the John/Jane Doe clerks relate to receiving and responding to emails and filings in the Family Court Proceeding. *Malek II*, Amend. Compl at 37.

Because these allegations all relate to "functions closely associated with the judicial process," *Weprin*, 116 F.3d at 66, Plaintiff's Section 1983 claims against Defendants Williams, Stanley, and the John/Jane Doe clerks are dismissed.

## D. ACS/NYC Children; ACS Attorneys and Staff

Plaintiff brings Section 1983 claims against the ACS/NYC Children and ACS staff: David Hansell (former Commissioner); Jess Dannhauser (current Commissioner); Rosmil Almonte; Ardaisha Hudson; Bolade Begho; Iyeisha Witherspoon; Leotta Green; Nicola Gibson; Paula Garcia; Rashima Ferguson; and Christopher Escobar. Plaintiff brings his claims against the individual ACS officials in their "personal and professional" capacities. *Malek I*, Amend.

27

Compl. at 16–18, *Malek II*, Amend. Compl. at 7–9; *Malek III*, Compl. at 21–28, *Malek IV*, Compl. at 18–23.

As an initial matter, it is well settled that "[a]ny suit against a City agency must be brought against the City of New York," not the agency itself.   *McDaniels v. Alepandr*, No. 19-cv-2286, 2019 WL 1936723, at *2 (E.D.N.Y. May 1, 2019).   This is because, while "the City of New York is amenable to suit, a municipality can be liable under § 1983 only if a plaintiff is able to show that a municipal policy or custom caused the deprivation of his constitutional rights." *Id*.; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).   Because it is a City agency, "ACS is not a suable entity."   *Ragland v. Coulter*, No. 20-cv-2002, 2021 WL 4430271, at *3 (E.D.N.Y. June 25, 2021), *report and recommendation adopted*, No. 20-cv-2002, 2021 WL 4406014 (E.D.N.Y. Sept. 27, 2021); *see also Graham v. City of New York*, 869 F. Supp. 2d 337, 348 (E.D.N.Y. 2012) ("ACS is an agency of the City of New York and cannot be sued independently.").   In addition, "claims against ACS workers in their official capacities are deemed to be claims against ACS," and thus also must be brought against the City of New York. *Ragland,* 2021 WL 4430271, at *3.   Accordingly, Plaintiff's claims against ACS/NYC Children and ACS staff in their official capacities are dismissed in their entirety.

However, Plaintiff makes a number of claims against ACS staff in their personal capacities as well.   To the extent Plaintiff brings claims against Almonte in her personal capacity for her role prosecuting the neglect petition brought by ACS, those claims are barred by the doctrine of absolute immunity.   In the Second Circuit, attorneys who prosecute child protection matters are entitled to absolute immunity as quasi prosecutors.   *See Walden v. Wishengrad*, 745 F.2d 149, 152 (2d Cir.1984).

Plaintiff alleges that Defendant Escobar wrote the "false psyche reports," *Malek IV*, ECF No. 1-13 (Exhibit M), rather than the licenced social worker or psychologist whose name is on the report.   *Malek IV*, ECF No. 1-10.   While Plaintiff repeatedly attacks, in conclusory fashion, the authenticity of those reports, *Malek IV*, Compl. at 7–9, he provides no factual detail to support the inference that Escobar wrote the reports.   Plaintiff has thus failed to allege plausibly a Section 1983 claim against Escobar.

Plaintiff alleges that Green, Garcia, and Ferguson also sought to harm him and his minor child.   *Malek III,* Compl. at 3–5.   Plaintiff's basis for this claim is limited to the fact that all three Defendants assessed Plaintiff's minor child and provided a report to the Family Court stating their conclusions.   *See e.g., Malek IV*, ECF No. 1-13 at 45–51 (report prepared by Defendants Green, Garcia, and Ferguson).   Based on these conclusory allegations, the Court finds that Plaintiff has not plausibly alleged Defendants harmed either Plaintiff or his minor child.   Plaintiff has thus failed plausibly to allege a Section 1983 claim against Green, Garcia, and Ferguson.

Plaintiff alleges that Hudson served Plaintiff with the original Family Court neglect petition.   *Malek I*, Amend. Compl. at 12.   While claiming that service was improper, *id.,* Plaintiff provides no further detail that would permit the Court to infer that Hudson violated Plaintiff's rights in any way by serving him with the petition.   Plaintiff has thus failed to allege plausibly a Section 1983 claim against Hudson.

As to the rest of the individual ACS Defendants—Hansell, Dannhauser, Gibson, Witherspoon, and Begho—Plaintiff does not allege any facts that would permit the Court to infer that they violated Plaintiff's rights in their personal capacities.   In order to state a claim under Section 1983, a plaintiff must allege facts showing the defendant's direct and personal

29

involvement in the alleged constitutional deprivation.   *See Spavone*, 719 F.3d at 135.

Additionally, "liability under Section 1983 cannot be generally imposed on a supervisor solely

based on his position because there is no *respondeat superior* or vicarious liability under Section

1983."   *Charles v. ACS Kings*, No. 16-cv-6589, 2017 WL 384323, at *3 (E.D.N.Y. Jan. 25,

2017).   Plaintiff does not allege any personal involvement on the part of Hansell, Dannhauser,

Gibson, Witherspoon or Begho.   *See Malek I*, Amend. Compl. at 13–14 (alleging that he

emailed Hansell but there was no reply); *id.* (alleging that he emailed Dannhauser but there was

no reply); *Malek III*, Compl. at 9 (alleging that he contacted Gibson by email); *Malek III*, Compl.

at 9–10 (alleging that Witherspoon and Begho violated his rights without providing further

detail).

Accordingly, Plaintiff's Section 1983 claims against Defendant ACS and ACS staff

Defendants Hansell, Dannhauser, Almonte, Hudson, Begho, Witherspoon, Green, Gibson,

Garcia, Ferguson, and Escobar are dismissed.

### E.  Office of the Corporation Counsel and Attorneys

Plaintiff brings Section 1983 claims against the New York City Law Department, (a/k/a

The Office of the Corporation Counsel) and individual Corporation Counsel attorneys David

Thayer, Kathryn Conway, Mark Galen Toews, Stephen Louis, and Sylvia O. Hinds Radix, the

Corporation Counsel (collectively, "Corporation Counsel Defendants").

Once again, as an initial matter, "[t]he Court must dismiss Plaintiff's claims against the

Office of Corporation Counsel, because an agency of the City of New York . . . is not an entity

that can be sued."   *Rochester v. Carter*, No. 20-cv-3427, 2020 WL 2857158, at *5 (S.D.N.Y.

June 1, 2020).   Accordingly, Plaintiff's claims against the Office of the Corporation Counsel as

an entity, and against Corporation Counsel Radix and other attorneys in that office—Thayer,

Conway, Toews, and Louis—in their official capacities, are dismissed in their entirety.   *See*

*Lore v. City of Syracuse*, 670 F.3d 127, 168 (2d Cir. 2012) (dismissing claims against a

Corporation Counsel attorney in his official capacity, because any suit against Corporation

Counsel in their official capacities is, in effect, a suit against the Office of the Corporation

Counsel, and any suit against the Office of the Corporation Counsel must be brought against the

City itself).

 To the extent Plaintiff's claims are brought against Radix, Thayer, Conway, Toews, and

Louis in their personal capacities, they are barred by the doctrine of absolute immunity.   Just

like with state attorneys, "[c]ity attorneys acting in their official capacity in defense of civil suits

are afforded absolute immunity against § 1983 actions seeking damages."   *Gugliara v. N.Y.C.*

*Hum. Res. Ctr.*, No. 08-cv-909, 2008 WL 11471011, at *2 (E.D.N.Y. Mar. 28, 2008).   Plaintiff's

allegations appear to stem from his objections to how the individual Corporation Counsel

Defendants have defended the City against Plaintiff's federal lawsuits.   *See, e.g., Malek III*,

Compl. at 4; Malek *IV*, Compl. at 39.

 Therefore, because absolute immunity bars Plaintiff's Section 1983 claims against the

individual Corporation Counsel Defendants in their personal capacities, these claims are

dismissed.

 **F.  Brooklyn and Manhattan DAs' Offices, the N.Y.P.D., and Detective Thimote**

 Plaintiff brings Section 1983 claims against the Brooklyn DA's Office, the Manhattan

DA's Office, the N.Y.P.D., and Andersen Thimote, a N.Y.P.D. Detective.

 Neither the District Attorneys' Offices, nor the N.Y.P.D. are entities amenable to suit.

*Rogers v. N.Y.C. Police Dep't*, No. 12-cv-3042, 2012 WL 4863161, at *2 (E.D.N.Y. Oct. 12,

2012) ("The N.Y.P.D. and the Kings County District Attorney's Office are not themselves suable

entities.").   Accordingly, the N.Y.P.D. and both District Attorneys' Offices are dismissed as defendants.

Plaintiff alleges "malicious anti-semetic [sic] and politically motivated prosecution" by Defendant Thimote.   *Malek V*, Compl. at 20.   The Court understands Plaintiff to be alleging a malicious prosecution claim against him.   "To state a claim for malicious prosecution under § 1983, a plaintiff must allege that his Fourth Amendment rights were implicated by criminal proceedings initiated or continued against him, with malice and without probable cause, and that the proceedings were favorably terminated."   *Reeder v. Vine*, No. 20-cv-6026, 2023 WL 2044126, at *8 (W.D.N.Y. Feb. 16, 2023) (citing *Thompson v. Clark*, 142 S. Ct. 1332, 1336 (2022)).   Here, Plaintiff has not alleged any facts indicating that there was ever a criminal proceeding initiated against him.   Plaintiff has thus failed to allege plausibly a Section 1983 malicious prosecution claim against Defendant Thimote.

Accordingly, Plaintiff's Section 1983 claims are dismissed against the Brooklyn DA's Office, the Manhattan DA's Office, the N.Y.P.D., and Thimote.

### G.  City of New York

Plaintiff brings a Section 1983 suit against the City of New York.

"[A] municipality may only be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law was caused by a governmental custom, policy, or usage of the municipality."   *Skates v. Inc. Vill. of Freeport*, 265 F. Supp. 3d 222, 234 (E.D.N.Y. 2017).   A plaintiff may satisfy the "policy or custom" requirement by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a

32

> supervising policy-maker must have been aware; or (4) a failure by
> policy makers to provide adequate training or supervision to
> subordinates to such an extent that it amounts to deliberate
> indifference to the rights of those who come into contact with the
> municipal employees.

*Id*. at 235.

Most of Plaintiff's allegations against the City appear to be premised on a theory of *respondeat superior* liability.   *See Malek II*, Amend. Compl. at 34 ("[T]he City of New York is also responsible for [ACS]").   However, "[a] municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability." *Monell*, 436 U.S. at 690–91.   Apparently aware of this flaw, *Malek IV*, Compl. at 42 ("Policy?   *Monell*?   Well when you do something illegal and have policies that contribute to such illegality[.]"), Plaintiff nevertheless fails to identify any municipal policy with which he takes issue.   *Id.*   In his most recent complaint, Plaintiff alleges that the City "has a policy of not prosecuting for false reports."   *Malek V*, Compl. at 20.   Beyond this vague, conclusory statement, Plaintiff provides no allegation to support his claim that such a policy exists.   Plaintiff has thus failed plausibly to allege a Section 1983 claim against the City, and his Section 1983 claims as to it are therefore dismissed.

### H.  Synmoie and Hevesi

Plaintiff brings Section 1983 claims against Patrick Synmoie, General Counsel at the Office of the New York City Clerk, and Andrew Hevesi, a member of the New York State Assembly.

Plaintiff's allegations against these individuals are threadbare.   He alleges that Defendant Synmoie "was contacted twice regarding turning over documents as to the legal existence of ACS."   *Malek V*, Compl. at 53.   As to Defendant Hevesi, Plaintiff merely alleges that he "ignored my emails."   *Malek III*, Compl. at 20.   Plaintiff does not identify what federal

right or statute he believes either Defendant violated.   Once again, "the failure to respond to Plaintiff[] . . . does not, without more, plausibly suggest that Defendants . . . were personally involved in the alleged violations of Plaintiff's constitutional rights."   *Malek*, 2022 WL 4120267, at *11; *Malek I*, ECF No. 135 at 11.   Plaintiff has thus failed plausibly to allege a Section 1983 claim against Synmoie or Hevesi.   Accordingly, those claims are dismissed.

### I.   Legal Aid and Legal Aid Attorneys

Plaintiff brings Section 1983 claims against Legal Aid, and Legal Aid staff:   Amy Serlin; Janet Sabel; and Travis Johnson.   Plaintiff particularly takes issue with Defendant Johnson, a staff attorney at Legal Aid, who was the attorney assigned to represent the interests of Plaintiff's minor child in the Family Court Proceeding.   *See Malek I*, Amend. Compl. at 21–22.

The Constitution regulates only the conduct of government actors and not that of private parties.   *See Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323 (2d Cir. 2002).   Private conduct, no matter how discriminatory or wrongful, is generally beyond the reach of Section 1983.   *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) ("[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.").

For Plaintiff to succeed on his Section 1983 complaint against a non-state actor, he must first establish that the conduct of those Defendants is "fairly attributable to the State."   *Sullivan*, 526 U.S. at 50.   In other words, for Plaintiff to show that his constitutional rights have been violated, he must first establish that the challenged conduct constitutes "state action."   *See Ciambriello,* 292 F.3d at 323.   Private individuals who are not state actors may be liable under Section 1983 if they have conspired with or engaged in joint activity with state actors.   *Anilao v.*

34

*Spota,* 340 F. Supp. 3d 224, 254 (E.D.N.Y. 2018), *aff'd,* 27 F.4th 855 (2d Cir. 2022) ("When the private actor takes a more active role, however, and jointly engages in action with state actors, he will be found to be a state actor.").

Plaintiff's Section 1983 claims against Legal Aid and Legal Aid staff fail because Plaintiff has not plausibly pled that the entity or individuals were acting under the color of state law.   *Azkour v. Bowery Residents Comm.*, *Inc.*, 646 F. App'x 40, 41 (2d Cir. 2016) (affirming dismissal of Section 1983 claim because defendant was a private entity, not a state actor).   Legal Aid itself is a 501(c)(3) nonprofit, not a state actor.[25]   It is irrelevant that Johnson was appointed as guardian *ad litem* by the Family Court, as "it is well-established that court-appointed attorneys performing a lawyer's traditional functions . . . do not act under color of state law and therefore are not subject to suit under 42 U.S.C. § 1983."   *Weprin*, 116 F.3d at 65–66.   This principle also applies for court-appointed guardians of minor children.   *See Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) ("Guardians *ad litem*, although appointed by the court, exercise independent professional judgment in the interests of the clients they represent and are therefore not state actors for the purposes of § 1983.").

Plaintiff's complaints contain very few allegations against the other named Legal Aid staff, and all the allegations appear connected to Legal Aid's representation of Plaintiff's minor child.   *See Malek I*, Amend Compl. at 25; *Malek III*, Compl. at 4.   None of these allegations establish that any of the individuals, or Legal Aid as an entity, acted under the color of state law. Thus, Plaintiff fails to state a valid Section 1983 claim against Legal Aid or any Legal Aid staff.

---

[25]    *See Annual Reports, Financial Statements, Form 990s*, THE LEGAL AID SOCIETY, https://legalaidnyc.org/about/annual-reports-financial-statements-form-990/ (last visited March 9, 2023).   Plaintiff does not allege that Legal Aid is a state actor in any of his complaints.

*See Washington v. Williams*, No. 19-cv-00289, 2019 WL 1876787, at *3 (E.D.N.Y. Apr. 26, 2019) ("Plaintiff has not alleged that the Private Individual Defendants were acting under color of state law when they allegedly deprived Plaintiff of her constitutional rights.").

Accordingly, Plaintiff's Section 1983 claims against Defendants Legal Aid, Serlin, Sabel, and Johnson are dismissed.

## J. Sun River Defendants

Plaintiff brings Section 1983 claims against a number of non-state employed individuals, Janie Groff, Robert Russ Lachanse, and Shilpika Varma, as well as one private entity, Sun River Health (collectively, "Sun River Defendants").   The Sun River Defendants were named for the first and only time in Plaintiff's complaint in *Malek IV* and appear to be connected to what Plaintiff alleges are "fraudulent psyche reports."   *Malek IV*, Compl. at 3.   Groff is a licensed social worker, who prepared a report related to Plaintiff's minor child.   *Malek IV,* ECF No. 1-10. Varma is a psychiatrist who prepared a report related to Plaintiff's minor child.   *Malek IV,* ECF No. 1-13 at 6–40.   Both Varma and Groff worked for Sun River Health (formerly, Brightpoint Health).   *Malek IV,* ECF No. 1-10; *Malek IV,* ECF No. 1-13 at 6–40.   Plaintiff alleges that Defendant Lachanse, a former employee of Sun River Health, was the individual who prepared the report, even though Plaintiff also alleges that Lachanse has not worked for Sun River Health since 2016.   *Malek IV*, ECF No. 1-13 at 3–4.

As noted above, private conduct, no matter how discriminatory or wrongful, is generally beyond the reach of Section 1983, unless Plaintiff can plausibly allege that the private conduct is "fairly attributable to the State."   *Sullivan*, 526 U.S. at 50.   Plaintiff has not met that burden here.   Moreover, licensed clinicians who submit reports in court relating to a plaintiff's minor children are not state actors.   *See Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000)

36

(finding that court-appointed psychologist who recommended Plaintiff not be granted custody in child-custody case not a state actor and therefore could not be held liable under Section 1983); *see also, e.g., Young v. N.Y. State Corr. & Cmty. Supervision*, No. 18-cv-5786, 2019 WL 591555, at *4 (E.D.N.Y. Feb. 13, 2019) (finding social worker defendants who examined Plaintiff and whose report supported his commitment as a sex offender were not state actors and thus could not be held liable under Section 1983); *Colliton v. Bunt*, No. 15-cv-6580, 2016 WL 7443171, at *7–8 (S.D.N.Y. Dec. 27, 2016), *aff'd*, 709 F. App'x 82 (2d Cir. 2018) (summary order) (holding defendant social worker who recommended that defendant be labeled a sex offender was not a state actor for the purpose of Section 1983).

Furthermore, Plaintiff does not provide any plausible allegations that the Sun River Defendants conspired with any state actor.   While Plaintiff alleges that the Sun River Defendants conspired with ACS to produce the reports, *Malek IV,* Compl. at 8, he further alleges that it was ACS, not the Sun River Defendants, that authored the reports.   *Id.*   As support for this allegation, he points to the fact that:   (i) the reports were either electronically signed, or stamped, by the psychiatrist and social worker whose names are attached to the reports, *Malek IV,* Compl. at 8; (ii) that the individuals involved with creating the reports were unwilling to be interviewed by him, *id.*; and (iii) that the reports were "uncorroborated / unsupported by outside sources," *id.* at 7.   Based on these allegations, the Court cannot reasonably infer that any of the Sun River Defendants "conspired with or engaged in joint activity with state actors."   *Anilao,* 340 F. Supp. 3d at 254.

Accordingly, Plaintiff's Section 1983 claims against the Sun River Defendants are dismissed.

37

### K.  Margaret Ingoglia and J.P.I.

Finally, Plaintiff brings Section 1983 claims against his child's mother, Margaret

Ingoglia, and her son (their child's half-brother), J.P.I. (collectively, the "Family Defendants").

Once again, private individuals are beyond the reach of Section 1983 unless Plaintiff can

plausibly allege that the conduct of the named Defendant is "fairly attributable to the State."

*Sullivan*, 526 U.S. at 50.   Plaintiff has not met that burden here, despite his assertion that the

Family Defendants "took part in acting along with state actors."   *Malek V*, Compl. at 18–19.

Rather, Plaintiff has provided nothing more than vague, conclusory allegations that the Family

Defendants have lied or abused his minor child, *see Malek IV,* Compl. at 3; *Malek V*, Compl. at

18–19, supported almost exclusively by Plaintiff's own bald assertions as support for these

claims, *see, e.g., Malek IV,* ECF No. 1-9.   At bottom, Plaintiff's primary assertion about the

Family Defendants is that they "[took] part in this complaint."[26]   *See Malek V*, Compl. at 18–19.

Filling out a police report, or an ACS complaint—even if allegedly false—does not

permit the Court to infer reasonably that the Family Defendants are state actors, nor does it raise

a valid civil rights claim.   *See Valez v. City of New York*, No. 08-cv-3875, 2008 WL 5329974, at

*4 (S.D.N.Y. Dec. 16, 2008) ("[M]erely filing a complaint with the police, reporting a crime,

requesting criminal investigation of a person, or seeking a restraining order, even if the

complaint or report is deliberately false, does not give rise to a claim against the complainant for

a civil rights violation . . . [nor does it] adequately allege the requisite conspiracy or joint

participation to support a finding of state action.").

---

[26]     Plaintiff appears to take issue with the Family Defendants' involvement in the Family
Court Proceeding, *Malek IV*, Compl. at 25–26, 45, and for allegedly reporting him for violating
the Family Court's protective order, *Malek V*, Compl. at 8.

38

Therefore, Plaintiff has not only failed to allege that the Family Defendants are state actors or have "conspired with or engaged in joint activity with state actors," *Anilao*, 340 F. Supp. 3d at 254, he has failed to allege plausibly any behavior on the part of the Family Defendants that would give rise to a civil rights claim.   *Koltz*, 822 F. Supp. at 117 ("[I]n the civil rights context, mere naked allegations are too conclusory to survive a motion to dismiss.").

Accordingly, Plaintiff's Section 1983 claims against Margaret Ingoglia and J.P.I. are dismissed.

## VI.    Claims Against Nonmoving Defendants

Some of the named Defendants have neither appeared in *Malek I–V*, nor moved to dismiss any of the complaints.[27]   "[H]owever, [a] district court has the power to *sua sponte* dismiss claims against nonmoving defendants for failure to state a claim, as long as the plaintiff has been given an opportunity to be heard."   *N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 232 (E.D.N.Y. 2020).

Here, most of the nonmoving Defendants are similarly situated to one or more of the moving Defendants.   The Court's analysis of the state and city agency Defendants is not unique—Plaintiff had ample opportunity to respond to the argument that state agencies have Eleventh Amendment immunity and that only New York City, not city agencies, can be sued under *Monell,* 436 U.S. at 690–91.   Plaintiff's claims against the nonmoving and moving

---

[27]     Entity Defendants the NYAG's Office and the Manhattan DA's Office have not appeared.   Individual ACS staff Defendants Begho, Escobar, Witherspoon, Green, Gibson, and Ferguson have not appeared.   Corporation Counsel Defendants Conway, Thayer, and Louis have not appeared.   NYAG Defendants James and Kuryluk have not appeared.   UCS Defendants White and John/Jane Doe have not appeared.   Legal Aid Defendants Serlin and Sabel have not appeared.   The Family Defendants, Margaret Ingoglia and J.P.I. have not appeared.   The Sun River Health Defendants have not appeared.   Defendant Hevesi, a New York State Assembly member, has not appeared.

Defendants from ACS, the New York Law Department, NYAG, and UCS are virtually identical—Plaintiff had ample opportunity to respond to the argument that these individuals have absolute immunity. *Id.* Plaintiff's claims against the nonmoving and moving Legal Aid staff are virtually identical—Plaintiff had ample opportunity to respond to the argument that these individuals did not act under color of state law. Plaintiff's claim against Defendant Hevesi is predicated on his lack of a response to Plaintiff's emails, an argument that Plaintiff was already informed lacked any merit. *See Malek*, 2022 WL 4120267, at *11; *Malek I*, ECF No. 135 at 11. "Because the Court's rulings in this Order would apply equally to the [moving and nonmoving] Defendant[s] . . . the Court dismisses the claims against [the nonmoving Defendants] *sua sponte*." *Beck v. City of N.Y.*, No. 12-cv-9231, 2014 WL 80544, at *1 (S.D.N.Y. Jan. 3, 2014).

Neither the Sun River Defendants nor the Family Defendants appeared in *Malek I–V*. The Court is dismissing both groups of Defendants because Plaintiff has failed to allege that either group acted under the color of state law, a legal requirement raised by the Legal Aid Defendants in their motion papers. *See Malek I*, ECF Nos. 27-1 at 8–9, 152-2 at 10–14. Plaintiff did not include any allegations that private actors acted under color of state law in his earlier complaints, but he did in his later complaints—this shows both that he was aware that the argument applied to other non-state-actor Defendants beyond Legal Aid, and his modifications to his later complaints addressing that argument show that he was given an opportunity to respond. *Compare Malek I*, Compl. (making no allegation that Margaret Ingoglia acted under color of state law), *with Malek V*, Compl. at 18–19 (alleging Family Defendants "took part in acting along with state actors").

In addition, the factual allegations against the Sun River Defendants and the Family Defendants are intricately linked to the allegations against Defendants who have appeared.

40

Those Defendants raised the factual inadequacy of these allegations in their motion papers.   *See, e.g.*, *Malek IV*, ECF No. 22 at 21 ("The Complaint makes wholly conclusory assertions of conspiracies among numerous Defendants, including various City Defendants, *the child's mother*, the mother's lawyer in the Family Court proceeding and Judge Williams, asserting time and again that these Defendants conspired to violate his constitutional rights by participating in the Family Court proceeding and the subsequent federal litigation, and even though they knew that ACS does not legally exist, *knew that the psychological and medical reports were false,* knew that the Family Court proceeding was invalid and so on.") (emphasis added).   Plaintiff was thus aware of the factual deficiencies in his complaints, yet still failed to address them. Accordingly, the Court *sua sponte* dismisses Plaintiff's claims against the nonmoving Sun River and Family Defendants for failure to state a claim. [28]

---

[28]      Even if assuming *arguendo* that Plaintiff did not have an opportunity to be heard, the Court would nevertheless find that his claims against the Sun River Defendants and Family Defendants should be dismissed because they are frivolous.   "A claim is frivolous where it lacks an arguable basis either in law or in fact."   *Hall v. Salaway*, No. 20-cv-4651, 2021 WL 826169, at *3 (E.D.N.Y. Mar. 3, 2021).   The Court has authority to *sua sponte* dismiss frivolous claims even if a plaintiff has paid the filing fee.   *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000).   Dismissal without notice is appropriate "where, as here, the frivolousness of a complaint is clear from prior litigation history and so notice serves little purpose."   *Curcio v. Abrams*, No. 22-693, 2023 WL 31183, at *2 (2d Cir. Jan. 4, 2023) (finding that a plaintiff's "successive identical complaints" already put plaintiff on notice and so additional "notice serves little purpose"); *see also Fitzgerald*, 221 F.3d at 364 (affirming *sua sponte* dismissal without notice where plaintiff filed third complaint based on the same underlying allegations).   Here, the Court finds that Plaintiff's claims that the Sun River Defendants and Family Defendants acted under the color of state law simply because they participated in the Family Court Proceeding or his subsequent federal lawsuits not only lack merit, as noted above, but are "wholly incredible."   *Thomas v. Carter*, 581 F. Supp. 3d 651, 654 (S.D.N.Y. 2022).

VII.    **Dismissal With Prejudice**

Generally, "a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."   *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.2010).

Here, the N.D.N.Y. court already granted Plaintiff leave to amend.   *Malek I*, ECF No. 97.   That court even noted that it had been lenient with such amendments when it made its earlier ruling in *Malek I*.   *See Malek*, 2022 WL 4120267, at *12; *Malek I*, ECF No. 135 at 12 ("Plaintiff has been given significant leeway to respond to each of the pending dispositive motions, including through a proposed amended and supplemental complaint.").   Despite the fact that Plaintiff was granted leave to amend after he been given the opportunity to read and respond to Defendants' motions to dismiss, *see Malek I*, ECF Nos. 27, 32, 44, 54, 59, 61, 62, 63, 70, 79, 82, 116, his amended complaint maintained the same legal deficiencies as the original.

In the last year and a half, Plaintiff has filed a total of seven complaints in five actions—all of which stem from the same set of facts and contain the same legal theories.   *See Malek I*, Compl. at 3; *Malek I*, Amend. Compl. at 2–5; *Malek II*, Compl. at 2–3; *Malek II*, Amend. Compl. at 2–5; *Malek III*, Compl. at 12–17; *Malek IV*, Compl. at 9–15; *Malek V*, Compl. at 12–23. Plaintiff has, in effect, amended his original complaint multiple times already—he has simply done so by filing a new action, rather than requesting leave to amend his original complaint. Courts of this Circuit have not granted leave to amend where "plaintiff has sought and will seek repeatedly to litigate and relitigate the same claims" in new actions.   *See New Phone Co., Inc. v. N.Y.C. Dep't of Info. Tech. & Telecomms.*, No. 03-cv-192, 2007 WL 9706464, at *9 (E.D.N.Y. Oct. 9, 2007), *report and recommendation adopted*, No. 03-cv-192, 2008 WL 11411325 (E.D.N.Y. Jan. 28, 2008); *see also*, *e.g.*, *Gitzis by Galanova v. Chen*, No. 20-cv-1149, 2020 WL

42

1140422, at *1 (E.D.N.Y. Mar. 9, 2020) ("Because this is the sixth lawsuit that plaintiff has

brought arising out of the same events, I will not permit her to amend this complaint."); *Burke v.*

*Verizon Commc'ns, Inc.*, No. 18-cv-4496, 2020 WL 6538748, at *8 (S.D.N.Y. Nov. 6, 2020)

(finding plaintiff's pattern of filing lawsuits which "evince a pattern of repeating arguments" a

reason not to grant leave to amend).   Finally, even when taking into account the "special

solicitude" that is afforded to *pro se* litigants, the Court cannot identify what additional facts

Plaintiff could possibly allege that "could remedy the legal deficiencies" in his various

complaints.   *In re Sibanye Gold Ltd. Sec. Litig.*, No. 18-cv-3721, 2020 WL 6582326, at *21

(E.D.N.Y. Nov. 10, 2020) ("Where nothing in the record suggests that another complaint could

remedy the legal deficiencies, the district court does not abuse its discretion in failing to provide .

. . leave to amend.").   The Court thus finds that "any attempt to re-plead would be futile." [29]

*Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 309 (2d Cir. 2022).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss, *Malek I*,

ECF Nos. 151, 152, 153; *Malek IV*, ECF No. 21; *Malek V*, ECF No. 14, for failure to state any

claim upon which relief may be granted.   The Court additionally dismisses *sua sponte* all claims

---

[29]    The Court notes that Magistrate Judge Reyes has also recently denied Plaintiff leave to
further amend his amended complaints because he also found "the proposed additional claims . .
. would likely be dismissed as futile."   *See Malek I*, ECF No. 209; *Malek II*, ECF No. 35; *Malek
III*, ECF No. 23; *Malek IV*, ECF No. 30; *Malek V*, ECF No. 30.   The Court further notes that,
even if any of Plaintiff's requests to supplement his amended complaint had been granted (*see
Malek I*, ECF Nos. 156, 162 and 209), the new claims and defendants he sought to add would
likewise have been dismissed by this Order for the reasons stated herein.

against the nonmoving Defendants for failure to state a claim upon which any relief may be granted.

The Clerk of the Court is directed to:   (1) consolidate these actions into the first-filed case, *Malek I* (No. 22-cv-5416); and (2) mark *Malek II* (No. 22-cv-6515), *Malek III* (No. 22-cv-6538), *Malek IV* (No. 22-cv-6775), and *Malek V* (No. 22-cv-7815) closed.   All future filings are to be docketed only in *Malek I*.   After consolidation, the Clerk of the Court is respectfully directed to close *Malek I* as well.

Furthermore, the Clerk of the Court is respectfully directed to mail a copy of this order to the *pro se* Plaintiff at his last known mailing address.   In addition, on or before March 16, 2023, the City Defendants are directed to send, via email and mail to his last known mailing address, Plaintiff copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and to submit to the Court at that time proof of service.

**SO ORDERED.**

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated:   Brooklyn, New York
         March 9, 2023

44